## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | |
|---|---|
| In re:<br><br>THE PEOPLE OF THE WAY<br>DELIVERANCE EVANGELISTIC CHURCH<br><br>Debtor. | Case No. 08-12448-SDB<br><br>Chapter 11<br><br>Hon. Susan D. Barrett |
| EVANGELICAL CHRISTIAN<br>CREDIT UNION,<br><br>    Movant<br><br>v.<br><br>THE PEOPLE OF THE WAY<br>DELIVERANCE EVANGELISTIC CHURCH,<br><br>    Debtor/Respondent. | CONTESTED MATTER |

### MOTION OF EVANGELICAL CHRISTIAN CREDIT UNION
### TO DISMISS CASE, OR ALTERNATIVELY
### FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW, Evangelical Christian Credit Union ("ECCU"), secured creditor of the Debtor, and pursuant to sections 362(d) and 1112(b) of the United States Bankruptcy Code, respectfully moves this Court for an Order dismissing this case or, alternatively, terminating the automatic stay as to ECCU and the real property described hereinbelow, and ordering sanctions, showing unto the Court as follows:

1.    This Court has jurisdiction of this matter pursuant to Title 28 U.S.C. §§ 1334, 151, and 157.

2.    Venue is proper in this Court pursuant to Title 28 U.S.C. § 1409 (a).

3.    This is a "core proceeding" pursuant to Title 28 U.S.C. § 157(b)(2)(G).

## FACTUAL BACKGROUND

4.     Debtor commenced the instant Chapter 11 proceeding on the morning of November 4, 2008, just minutes before a foreclosure sale was to take place at the Jefferson County Courthouse of the Debtor's real property.

5.     No trustee, examiner, or Official Committee of Unsecured Creditors has been appointed in the case.

6.     According to Debtor's Schedules, Debtor's only assets are three parcels of real estate located at 2472 Highway 17 North, 505 Stephens Street, and 208 Broad Street, Wrens, Georgia (the "Properties").  The Schedules list no bank accounts, vehicles, office equipment or personal property of any kind.

7.     Debtor utilizes the Highway 17 property as a church.  The other two properties are not devoted to any revenue producing uses to the best of ECCU's knowledge.

8.     According to the Statement of Financial Affairs, Debtor's year to date income in 2008 is $83,000.

9.     ECCU is the only creditor listed on Debtor's Schedules.

10.    Debtor is indebted to ECCU under a Promissory Note (the "Note") dated May 24, 2004 in the original principal sum of Six Hundred Fifty Thousand Dollars ($650,000.00), a true and correct copy of which is attached hereto as Exhibit A.

11.    Due to defaults by Debtor under the Note in 2007, ECCU accelerated the Note and declared the entire sum owing thereon due and payable.  ECCU and Debtor then entered into a Forbearance Agreement and a Loan Modification Agreement, both dated April 11, 2007, pursuant to which certain arrearages were converted to principal and the outstanding principal amount was thereby increased to $683,815.00, and other terms of the loan were modified.  True

770281-02

and correct copies of the Forbearance Agreement and the Loan Modification Agreement are attached hereto as Exhibits B and C, respectively.

12.     Under the Forbearance Agreement and Loan Modification Agreement, all principal, interest and other sums due under the Note were due and payable in full on May 1, 2008. The maturity date was further extended to July 1, 2008 by a Revision and Extension Agreement dated May 30, 2008, a copy of which is attached hereto as Exhibit D.

13.     As of the Petition Date principal was due in the amount of $699,562.43, plus accrued interest of $25,478.86 and late fees of $11,558.58, for a total of $736,599.87, exclusive of legal fees and expenses (the "Indebtedness").

14.     The obligations of Borrower under the Note are secured by that certain Security Deed dated May 24, 2004 and recorded in the Office of the Clerk of the Superior Court of Jefferson County, Georgia at Book 368, Page 415 (the "Security Deed"), and that certain Assignment of Rents dated May 24, 2004 and recorded in the Office of the Clerk of the Superior Court of Jefferson County, Georgia at Book 368, Page 425 (the "Assignment of Rents"), and that certain Modification of Security Deed dated April 11, 2007 and recorded in the Office of the Clerk of the Superior Court of Jefferson County, Georgia at Book 420, Page 450 ("Security Deed Modification"). True and correct copies of the Security Deed, the Assignment of Rents and the Security Deed Modification are attached hereto as Exhibits E, F and G, respectively.

15.     Pursuant to the Security Deed, the Assignment of Rents and the Security Deed Modification, Debtor granted to ECCU a first priority lien upon and security interest in each of the Properties and assigned and conveyed to ECCU all the rents and revenues ("Rents") of the Properties.

16.     The Note, as modified, matured by its terms on July 1, 2008, and all sums owing

thereupon became immediately due and payable. Debtor has been unable to payoff the Note or refinance the Properties. Debtor has made no payments to ECCU since June 30, 2008.

17.     On September 29, 2008, ECCU made demand upon Debtor for payment of the sums due under the Note.

18.     As a result of Debtor's continuing default, ECCU commenced foreclosure proceedings against the Debtor by advertising the Properties for sale for a November 4, 2008 foreclosure and providing all required statutory notices. The instant petition was filed minutes before the foreclosure sale would have taken place on the courthouse steps.

19.     Debtor has offered no adequate protection of ECCU's security interest.

20.     Debtor's Statement of Financial Affairs indicates Debtor's income for the year to date has been $83,000. That amount would be equivalent to approximately $99,000 on an annualized basis. By way of comparison, the interest alone on the Note is in excess of $58,000 annually, thus calling into doubt the ability of Debtor to meet ordinary operating expenses and also service the debt on the Properties.

21.     Debtor has filed no Plan of Reorganization in the case. Indeed, the ability of Debtor to go forward with the case has come into question as a result of the motion of Debtor's counsel to withdraw, filed November 13.

## ARGUMENT AND CITATION OF AUTHORITIES

### The Case is a Bad Faith Filing

22.     Section 1112(b)(1) of the Bankruptcy Code allows the Court to dismiss a bankruptcy case for "cause." The Eleventh Circuit has interpreted "cause" to include bankruptcy cases filed in bad faith by a debtor who "seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th

Cir. 1984).

    23.     In *In re Phoenix Piccadilly Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988), the Court of Appeals for the Eleventh Circuit identified six non-exclusive factors to be considered by courts in evaluating whether the Debtor filed the petition in bad faith thereby allowing dismissal of the case or relief from the stay for the secured creditor: "1) Whether the debtor has only one asset, usually real estate, in which it does not hold legal title (a so called "single-asset" debtor); 2) Whether the debtor has few unsecured creditors whose claims are small in relation to the claims of secured creditors; 3) Whether the debtor has a limited number of employees; 4) Whether the property is the subject of a foreclosure action as a result of arrearages on the debt; 5) Whether the debtor's financial problems involve essentially a dispute between the debtor and its creditors holding an interest in the real estate which can be resolved in the pending state court action; 6) Whether the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; 7) Whether there is a reasonable possibility of an effective reorganization of the debtor." *In re Coastal Nursing Center*, 164 B.R. 788, 794 (Bankr.S.D.Ga. 1993) (citing *Phoenix Piccadilly*).

    24.     In addition to the non-exclusive list of factors set forth in *Phoenix Piccadilly*, this Court has identified additional factors as possible indicators of bad faith, including: "(i) creation of a debtor for the purpose of acquiring property and protecting that property under the automatic stay; (ii) a debtor's use of the bankruptcy process to create and organize a new business; (iii) the appearance that a debtor is merely a shell corporation; (iv) the filing of a previous bankruptcy petition; (v) the absence of pressure on the debtor from non-moving creditors; (vi) the debtor's improper prepetition conduct; (vii) the effect of the petition is to allow the debtor to evade court orders; and (viii) no possibility of reorganization." *In re Travelot Co.,* 286 B.R. 447, 460

770281-02

(Bankr.S.D.Ga. 2002) (internal citations omitted).

25.    The filing of this bankruptcy case by Debtor satisfies many of the foregoing factors. Debtor's only asset is the Properties; Debtor has no unsecured creditors; the Debtor has few or no employees; the Properties were the subject of a foreclosure proceeding; Debtor's sole financial problem is the two party dispute with ECCU, its secured creditor; and Debtor's filing for bankruptcy protection on the morning of the scheduled foreclosure sale is clear evidence of an intent to frustrate the efforts of ECCU in enforcing its rights.

26.    There is no prospect of reorganization inasmuch as the value of the Properties does not support a refinancing of the debt, ECCU does not consent to being crammed down, and Debtor cannot confirm any plan over the objection of its only creditor, ECCU.

**ECCU is Entitled to Relief from the Stay**

27.    The Court should grant relief from the automatic stay (a) because Debtor agreed in the Forbearance Agreement to waive the protection of the automatic stay in a subsequent bankruptcy case, or alternatively (b) because Debtor has no equity in the Properties, cannot provide adequate protection of ECCU's security interest and the Properties are not necessary for an effective reorganization.

Debtor consented to stay relief in the Forbearance Agreement.

28.    Debtor agreed at Paragraph 7(e) of the Forbearance Agreement that "[S]hould Borrower default under the terms of this agreement and/or under the terms of the Loan Documents or initiate bankruptcy proceedings it will waive any protection afforded by the Automatic Stay pursuant to 11 U.S.C. §362 of the US Bankruptcy Code, and agrees it will not oppose any Motion for Relief From Stay that may be filed by Credit Union or any and all other remedies Credit Union has available including but not limited to Foreclosure."

29.     Consents to stay relief that are knowingly and voluntarily entered into by a borrower after default are enforceable.  In *In re Bryan Road*, 382 B.R. 844 (Bankr.S.D.Fla. 2008), the bankruptcy court enforced a stay relief consent provision in a forbearance agreement. The court applied the factors cited by this Court in *In re Desai*, 282 B.R. 527 (Bankr.M.D.Ga. 2002), in which this Court held that stay relief waivers were enforceable in appropriate cases, and that the court should consider the following factors:  "(1) the sophistication of the party making the waiver; (2) the consideration for the waiver, including the creditor's risk and the length of time the waiver covers; (3) whether other parties are affected including unsecured creditors and junior lienholders, and; (4) the feasibility of the debtor's plan."

30.     In this case the Debtor is not an unsophisticated consumer, and furthermore Debtor acknowledged in the Forbearance Agreement that Debtor had the opportunity to consult counsel regarding the terms and conditions of the Forbearance Agreement.  Additionally, Debtor obtained valuable consideration under the Forbearance Agreement, including a forbearance period of more than a year for a debt that had been accelerated.  No other creditors are being affected by the waiver inasmuch as ECCU is the only creditor listed.  Lastly, as explained herein, Debtor has no feasible plan and cannot cram down ECCU without its consent.

<u>Relief from the Stay is Warranted Under Sections 362(d)(1) and/or 362(d)(2)</u>

31.     Section 362(d)(1) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay for "cause, including the lack of adequate protection of an interest in property of such party in interest".  11 U.S.C. § 362(d)(1).  Adequate protection under 11 U.S.C. § 362(d)(1) is defined as cash payments to compensate for the decrease in value of the creditor's interest in the property, additional or replacement liens, or other such relief that is the indubitable equivalent of the creditor's interest in the property. 11 U.S.C. § 361.  Debtor has

failed to provide any amount of adequate protection whatsoever to ECCU.

32.     Courts have defined "other such relief" under 11 U.S.C. § 361 to include an equity cushion. 2 COLLIER'S ON BANKRUPTCY § 362.07 [3][d][i].  For purposes of adequate protection, an equity cushion is present if there is a comfortable surplus between the value of the collateral minus the amount of the creditor's claim. *Id.*

33.     Alternatively, § 362(d)(2) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay where "(A) the Debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization".  11 U.S.C. § 362(d)(2).  The Court must determine if there is a "reasonable possibility of a successful reorganization within a reasonable time" and that the property is necessary for the reorganization. *United Sav. Association of Texas v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 376 (1988).

34.     Debtor has valued the Properties at an aggregate of $928,932.00 in its Schedules, which appears to be based approximately on the tax assessed value of the three parcels. However, Debtor has had the Properties listed for sale for an extended period of time and has not been able to find any buyers.  Therefore ECCU believes that the tax values are not realistic and that any apparent equity suggested by them is illusory.

35.     The burden of proof on the issue of whether property is necessary for an effective reorganization shifts to the debtor once it is established that the debtor has no equity in the property. *Anderson v. Farm Credit Bank of St. Paul*, 913 F.2d 530, 532 (8th Cir. 1990).  "The appropriate test for determining whether collateral is 'necessary to an effective reorganization' is (1) whether the collateral is, in fact, necessary to [the debtor's] reorganization efforts, and (2) there is a reasonable possibility of a successful reorganization within a reasonable time." *Farm*

*Credit of Central Florida v. Polk*, 160 B.R. 870, 874 (M.D.Fla. 1993).

36.     The Debtor is incapable of generating enough income from operation of the Properties to allow Debtor to reorganize effectively.   As noted above, Debtor's income is inadequate to support both debt service and operating expenses on the Properties.   Moreover, the Debtor's schedules reveal no cash reserves or other liquid assets of any kind.

37.     ECCU, as Debtor's only creditor, will not consent to a Plan which does not pay the Indebtedness in full. Consequently, Debtor cannot have an accepting impaired class as required by Sections 1126 and 1129 of the Bankruptcy Code in order to confirm a plan of reorganization.

38.     Continuation of the Automatic Stay as to ECCU and the Properties will result in a real and irreparable harm suffered by ECCU.

WHEREFORE, ECCU requests that this Court enter an Order dismissing this case, or alternatively an Order terminating the Automatic Stay, allowing ECCU to obtain possession of the Properties and dispose of them in accordance with the loan documents and Georgia law including foreclosing on the Properties, and for such other and further relief as this Court deems just and proper under the circumstances.

RESPECTFULLY submitted this 1st day of December, 2008.

HUNTER, MACLEAN, EXLEY & DUNN, P.C.

/s/ Frank J. Perch, III
Frank J. Perch, III (Bar No. 142225)
200 East Saint Julian Street
Post Office Box 9848
Savannah, Georgia 31412-0048
Telephone: (912) 236-0261
Facsimile:(912) 236-4936

ATTORNEYS FOR ECCU

The signatures represented by 's/' on this document conform to original signatures on the paper version of this document maintained by the Filing User.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08-12448-SDB |
| | ) | |
| THE PEOPLE OF THE WAY | ) | Chapter 11 |
| DELIVERANCE EVANGELISTIC CHURCH | ) | |
| | ) | Hon. Susan D. Barrett |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| EVANGELICAL CHRISTIAN | ) | |
| CREDIT UNION, | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| THE PEOPLE OF THE WAY | ) | |
| DELIVERANCE EVANGELISTIC CHURCH, | ) | |
| | ) | |
| Debtor/Respondent. | ) | |

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above **Motion for Dismissal or Relief from**

**the Automatic Stay** was served on the following parties by first class mail on the 1st day of

December, 2008.

Lauminnia F. Nivens, Esquire
601 Broad Street
Augusta, Georgia  30901

Matthew E. Mills, Esquire
Assistant United States Trustee
222 West Oglethorpe Avenue, Suite 302
Savannah, Georgia 31401

People of the Way Deliverance Evangelistic
Church, Inc.
208 Broad Street
Wrens, Georgia 30833

People of the Way Deliverance Evangelistic
Church, Inc.
c/o Dr. Christine Wallace, CEO
1528 Flagler Road
Augusta, Georgia 30909

/s/Frank J. Perch, III/
Frank J. Perch, III

# EXHIBIT A

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $650,000.00 | 05-24-2004 | 06-01-2009 | | 1TDF / B1BF | | CRC | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** The People of the Way Deliverance Evangelistic
Church dba Praise Deliverance Church, A Georgia
Non-Profit Corporation
505 Stephens Street
Wrens, GA 30833

**Lender:** Evangelical Christian Credit Union
955 West Imperial Highway
Brea, CA 92821

---

**Principal Amount: $650,000.00**          **Interest Rate: 7.625%**          **Date of Note: May 24, 2004**

**PROMISE TO PAY.** The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, A Georgia Non-Profit Corporation ("Borrower") promises to pay to Evangelical Christian Credit Union ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Hundred Fifty Thousand & 00/100 Dollars ($650,000.00), together with interest at the rate of 7.625% per annum on the unpaid principal balance from May 24, 2004, until paid in full. The interest rate on this Note will increase under the following circumstances: The rate reduction will terminate if Borrower does not maintain a full banking relationship with Lender. The interest rate on this Note will increase as follows: The new rate will be determined by increasing the stated rate by .125 percentage point, at the sole discretion of the Lender. Whenever increases occur in the interest rate, at Lender's option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PAYMENT.** Borrower will pay this loan in 59 regular payments of $4,856.23 each and one irregular last payment estimated at $601,941.71. Borrower's first payment is due July 1, 2004, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on June 1, 2009, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREFERRED RATE REDUCTION.** The interest rate on this Note includes a preferred rate reduction. Following is a description of the event that would cause the preferred rate reduction to terminate and how the new rate will be determined upon termination of the preferred rate reduction.

   **Description of Event That Would Cause the Preferred Rate Reduction to Terminate.**
   The rate reduction will terminate if Borrower does not maintain a full banking relationship with Lender.
   **How The New Rate Will Be Determined Upon Termination of the Preferred Reduction.**
   The new rate will be determined by increasing the stated rate by .125 percentage point, at the sole discretion of the Lender.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Evangelical Christian Credit Union, 955 West Imperial Highway, Brea, CA 92821.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **6.000% of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall immediately increase by 2.000 percentage points, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

   **Payment Default.** Borrower fails to make any payment when due under this Note.

   **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

   **Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

   **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

   **Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

   **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the

# PROMISSORY NOTE
## (Continued)

Page 2

creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $14.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) an Assignment of All Rents to Lender on real property located in Jefferson County, State of Georgia.

(B) a Security Deed dated May 24, 2004, to Lender on real property located in Jefferson County, State of Georgia.

**AUTOMATIC TRANSFER.** The terms of this note include the requirement that payments are to be made to the loan by automatic transfer from the Borrower's primary checking account. In connection with same, Borrower authorizes and instructs Lender to deduct each payment as it becomes due under this note from their primary checking account being held at Evangelical Christian Credit Union under Account No. 936992. The account to be debited for payments owing under this note may be changed from time to time by Borrower providing written notification to Lender at least five (5) business days prior to any payment due date of such change. In the event the account to be used for payments is not held at Evangelical Christian Credit Union, Borrower will provide a voided check or other evidence of account information concerning the account to be debited for payments.

**CASH RESERVES.** Borrower will maintain on deposit with the lender a minimum of $14,500.00 in overall cash reserves. These funds will be used exclusively for debt service on the loan during extraordinary situations and will be placed on hold.

**INTEREST AFTER DEFAULT.** Upon the occurrence of any Event of Default referred to under this Note, Lender, at its option, may, if permitted under applicable law, increase the fixed interest rate on this Note 2.000 percentage points.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**THE PEOPLE OF THE WAY DELIVERANCE EVANGELISTIC CHURCH DBA PRAISE DELIVERANCE CHURCH, A GEORGIA NON-PROFIT CORPORATION**

By: _____
Christine Wallace, President of The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, A Georgia Non-Profit Corporation

By: _____
Sharena Vaughn, Secretary of The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, A Georgia Non-Profit Corporation

# EXHIBIT B

## FORBEARANCE AGREEMENT

Evangelical Christian Credit Union having offices at 955 West Imperial Highway, Brea, California, 92821 ("Credit Union") and The People of the Way Deliverance Evangelistic Church, Inc. DBA Praise Deliverance Church, a Georgia corporation, whose address is 2474 Highway 17 North, Wrens, GA 30833 ("Borrower"); enter into this Forbearance Agreement as of April 11, 2007.

## RECITALS

WHEREAS, on May 24, 2004 Borrower executed a certain promissory note evidencing indebtedness to Credit Union and certain documents of security evidencing grants of security interests in certain collateral for the payment of the promissory note, which unpaid promissory note and pertinent security documents (Loan Documents) are more particularly described as follows:

1.  Note executed by Borrower to Credit Union on May 24, 2004, in the principal sum of $650,000.00.
2.  Security Deed dated May 24, 2004 and recorded May 26, 2004 in Deed Book 368, Pages 415-424 with the Jefferson County Georgia, Office of Clerk of Superior Court.
3.  Assignments of Rents dated May 24, 2004 and recorded on May 26, 2004 in Deed Book 368, Pages 425 – 431 with the Jefferson County Georgia, Office of Clerk of Superior Court.

WHEREAS, as of April 11, 2007, there is outstanding on the note the principal sum of $636,438.87, together with interest from January 29, 2007.

WHEREAS, Borrower acknowledges and agrees that on the date hereof, Borrower is in default under the terms and conditions of the Note and Security Documents and all of the other documents and instruments incident to the financial transactions between the parties hereto, due to Borrower's failure to comply with the requirements as set forth in the Loan Documents, including, without limitation, payments due and owing pursuant to the terms of the Note;

WHEREAS, Borrower requests that Credit Union forbear from exercising any of its rights or remedies upon default as are evidenced in the Loan Documents or as are available to Credit Union at law or at equity until May 1, 2008;

WHEREAS, Credit Union is willing to forbear from exercising its rights and remedies upon default as aforedescribed until May 1, 2008, provided Borrower strictly comply with the terms and conditions of this Agreement; and,

NOW, THEREFORE, in consideration of the representations, covenants, and mutual promises contained herein, and for other good and valuable consideration exchanged between the parties, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1.  Acknowledgment of Default, Acceleration and Other Issues.

    a.  Borrower hereby acknowledges and agrees that Borrower is in default pursuant to the terms and conditions of the Note dated May 24, 2004 and pursuant to the Loan Documents executed by Borrower to secure said Note, and that any and all applicable notice required and cure periods provided under the Loan Documents or applicable law has been appropriately given and expired. Borrower further acknowledges and agrees that by default, Credit Union had the right to immediately exercise any and all rights and remedies available upon default of Borrower pursuant to the Loan Documents, in law and equity, including, without limitation, the right to foreclose on the collateral property.

b.     This Agreement has been properly authorized by Borrower's Board of Directors and, if necessary, Borrower's congregation. The officers signing this Agreement on behalf of the Borrower has the full power and authority to bind Borrower to the terms hereof and the agreements and documents executed in connection herewith.

c.     The execution and delivery by Borrower of this Agreement and the instruments contemplated hereby and the performances of its obligations hereunder and thereunder have been duly authorized and shall constitute legal, valid and binding obligations of Borrower.

d.     The execution and delivery of this Agreement and the instruments contemplated hereby, and compliance with the provisions hereof and thereof, will not conflict with or constitute a breach of, or a default under the agreements forming Borrower or any applicable law, rule, regulation or order of any court, administrative agency, or other governmental entity, and will not conflict with, or constitute a breach of or default under, and will not cause the acceleration of any obligation under, any agreement or other instrument to which Borrower is a party or by which Borrower is bound or to which Borrower or any portion of Borrower's properties or assets are subject.

e.     There are no existing liens, encumbrances, agreements, encroachments, overlaps, special assessments, claims, leases, tenancies, other adverse interests or defects upon or affecting the collateral properties, except as already disclosed to Credit Union.

f.     All information provided by Borrower to Credit Union, including financial statements are true, complete and accurate.

2.     Defenses, Counterclaims and Setoffs.  Borrower acknowledges and affirms that as of the date of execution of this Agreement, there are no defenses, counterclaims, or setoffs which Borrower may assert or claim against Credit Union and that Credit Union has not violated any of the terms or conditions of the Loan Documents, nor made any representations or promises to Borrower which are not herein contained or contained in the Loan Documents.

3.     Loan Documents.  For purposes of this agreement, "Loan Documents" includes the note and security documents and all of the other documents and instruments incident to the financial transactions between the parties hereto.

4.     Amendment to Loan Documents.  From the date of execution of this Agreement to May 1, 2008, being hereinafter referred to as the "Forbearance Period," upon Borrower's continuing compliance with Section 6, Credit Union is willing to forbear from exercising its rights and remedies upon default until May 1, 2008 and to agree to the following modifications to the Loan Documents:

a.     Payments: Interest only payments will be extended to April 10, 2008.
b.     All of the other terms, conditions, provisions and covenants of the Loan Documents shall remain in full force and effect, except as changed by the amendments and modifications described herein.

2

5.     Security for Indebtedness (as hereinafter defined).  As security for the repayment of the Note and for all other indebtedness of Borrower to Credit Union, whether now existing or hereinafter incurred of any kind or nature (hereinafter, collectively referred to as the "Indebtedness"), Borrower agrees:

        a.      That the security interests granted to Credit Union in all documents and instruments of security evidencing such interests, shall continue in full force and effect until all indebtedness, whether now existing or hereinafter incurred, has been paid in full, or until so agreed upon jointly by Borrower and Credit Union.

6.     Forbearance of Credit Union's Rights and Remedies.  Provided that Borrower strictly complies with all terms and conditions of this Agreement, Credit Union agrees to forbear from exercising any of its rights and remedies upon the default of Borrower, as such default has been herein before described, and as such rights and remedies are evidenced herein, in the Loan Documents, and as are available to Credit Union at law or in equity for the time period commencing with the date of execution of this Agreement and continuing until June 1, 2008.

7.     Borrower's Obligations.  In consideration of the Credit Union's forbearance, Borrower agrees:

        a.      Borrower must provide Credit Union and Borrower's Board of Directors with monthly financial statements, in form and substance acceptable to Credit Union.  January, February, and March, 2007 statements will be due on or before April 20, 2007.  All subsequent months will be due by the 20th day of the following month (i.e. April, 2007 financial statements will be due on or before May 20, 2007, May, 2007 will be due June 20, 2007 etc.).

        b.      Borrower may not incur any capital expenditure or non-ordinary expense in excess of $2,500.00 without the approval of Borrower's Board of Directors and Credit Union.

        c.      Borrower must immediately list the properties commonly known as, 505 Stephens Street and 208 Broad Street, Wrens, GA for sale, with a broker licensed to sell real estate in the State of Georgia.  All proceeds from the sale of said properties must be paid to Credit Union and will be applied to reduce the outstanding principal balance of loan.

        d.      During the forbearance period, Borrower is prohibited from entering into any additional debt with expressed written permission of Credit Union.

        e.      Borrower further agrees that should Borrower default under the terms of this agreement and/or under the terms of the Loan Documents or initiate bankruptcy proceedings it will waive any protection afforded by the Automatic Stay pursuant to 11 U.S.C.§ 362 of the US Bankruptcy Code, and agrees it will not oppose any Motion for Relief From Stay that may be filed by Credit Union or any and all other remedies Credit Union has available including but not limited to Foreclosure.

        f.      Borrower agrees to continue to meet all other obligations required under the Loan Documents.

8.     Release of Lender.  The Borrower agrees as follows:

        a.      Except for the agreements of Credit Union set forth herein, the Borrower hereby fully, finally and completely RELEASES and FOREVER DISCHARGES Credit Union and its successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, servicers, attorneys, agents and properties, past, present and future, and their

3

respective heirs, successors and assigns (collectively and individually, "Credit Union Parties"), of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, debts, liens, actions and causes of action of any and every nature whatsoever, known or unknown, whether at law, by statute or in equity, in contract or in tort, under state and federal jurisdiction, and whether or not the economic effect of such alleged matters arise or are discovered in the future, which the Borrower may now have or may claim to have against the Credit Union Parties connected with or relating to the loan evidenced by the Loan Documents, the collateral properties, or relating to any other event, act, occurrence, or matter whatsoever in connection with the transaction evidenced by the Loan Documents.

b.      The above release is intended to be, and is, a full, complete and general release in favor of the Credit Union Parties with respect to all claims, demands, actions, causes of action and other matters described in Paragraph (a) above including, without limitation, any claims, demands, or causes of action based upon allegations of, for, or in connection with, but not limited to, breach of fiduciary duty, breach of any alleged duty of fair dealing or good faith, breach of confidence, undue influence, duress, economic coercion, usury, conflict of interest, intentional tort, negligence, gross negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with partnership governance or prospective business advantage, breach of contract, deceptive trade practices, libel, slander, fraud, misrepresentation, conspiracy or any other theory, cause of action, occurrence, matter or thing which might give rise to liability upon the Credit Union Parties in connection with the transaction evidenced by the Loan Documents.

c.      The Borrower understands and agrees that the foregoing general release is in full satisfaction for the agreements of Credit Union contained herein and that they will receive no further consideration for such release, and agree not to assert or prosecute any further claims or lawsuits against any party included within the Credit Union Parties, whether specifically named or identified, with respect to any matter covered by Paragraphs (a) and (b) above.  Any and all claims intended to be released as provided above against any party included within the term Credit Union Parties and not specifically named or identified are hereby assigned in full to such party hereby intended to be released.

d.      The release described herein includes claims of which Borrower is presently unaware or which Borrower does not presently suspect to exist which, if known by Borrower, would materially affect Borrower's release of the Credit Union Parties.  **Borrower specifically waives any provision of applicable law which is inconsistent with the foregoing sentence and further specifically waives and relinquishes any and all rights and benefits afforded by Section 1542 of the California Civil Code reading entirely as follows (parentheticals added):**

> **"A general release does not extend to claims which the creditor (i.e. Borrower) does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor (i.e. Credit Union Parties)."**

e.      Credit Union has given Borrower material concessions regarding this transaction in exchange for Borrower agreeing to the provisions of this Section 6.  Borrower has initialed this Section 8 to further indicate its awareness and acceptance of each and every provision hereof.

_Cw_
Borrower's Initials

4

9.   **Events of Default.** Upon the occurrence of any of the following events of default, Credit Union may immediately exercise any and all rights and remedies available to it under the Loan Documents or as set forth in this Agreement, without notice or opportunity to cure such default:

   a.   The non-performance of any obligation contained in this Agreement.

   b.   The failure of any representation, warranty or information provided by Borrower to Credit Union to be complete and accurate, including, without limitation, the representations and warranties made in this Agreement.

   c.   If a judgment, decree or order not fully covered by insurance shall have been entered by a Court of competent jurisdiction against Borrower, or any writ or warrant of attachment, garnishment or any similar process shall have been filed against any collateral of Borrower and such judgment, decree, order, writ or warrant of attachment, garnishment, or similar process shall have remained unsatisfied, unvacated, unbonded or unstayed for a period of fifteen (15) calendar days.

   d.   Borrower shall have become insolvent or shall admit in writing its inability to meet its obligations as they mature, or shall apply for the appointment of a trustee or receiver for all or any portion of its properties, assets or the collateral, or any such trustee or receiver shall be appointed, and if appointed in a proceeding brought against Borrower, Borrower by any action or inaction shall indicate approval of, consent to or acquiescence in such appointment, or any such trustee or receiver shall not be discharged forthwith; or any proceedings shall be commenced by or against Borrower under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law or statute of the United States or of any state thereof, and if such proceedings shall be instituted against Borrower, it shall, by any action or inaction, indicate approval of, consent to, or acquiescence therein, or the same shall not be dismissed for a period of thirty (30) calendar days.

   e.   If the Credit Union in good faith reasonably believes that the value of the collateral, or the ability of Borrower to pay the indebtedness to Credit Union is, or will soon be, impaired, time being of the essence.

10.   **Indemnification.** Borrower agrees to indemnify and hold Credit Union, and its nominee, free and harmless from and against any losses, damages, costs and expenses (including, without limitation attorneys' fees) arising as a direct or indirect result of (i) breach of any representation or warranty of Borrower, or (ii) any breach or default by Borrower under any of the covenants or agreements contained in this Agreement, or (iii) events that occurred prior to the date of transfer of the collateral properties from Borrower to Credit Union. To the extent permitted by applicable law, the obligations of Borrower under this Paragraph 9 shall survive the termination of this Agreement or the transfer of the collateral property to Credit Union for a period of five (5) years after the date hereof.

11.     Notices.  All notices, requests, and communications shall be in writing, and the sending or giving of such notices, requests and communications shall be sufficient in all respects if sent by first class mail, with postage fully prepaid, or which are personally delivered to the other party at the following addresses:

      a.      If to Credit Union:

             Evangelical Christian Credit Union
             Attention:  Director of Loan Servicing
             955 West Imperial Highway
             Brea, CA 92821

      b.      If to Borrower:

             The People of the Way Deliverance Evangelistic Church, Inc.
             DBA Praise Deliverance Church
             2474 Highway 17 North
             Wrens, GA 30833

Unless otherwise provided to the contrary, all notices shall be effective when sent or delivered.  Each party may, by proper written notice hereunder to the other party, change the address to which notices shall thereafter be sent to it.

12.     Miscellaneous.

      a.      This Agreement shall be binding upon and shall inure to the benefit of the Borrower and Credit Union, and their successors and assigns, provided that the foregoing shall not authorize any assignment by Borrower of any of its rights or duties hereunder, which assignment, in whole or in part, shall not be permissible except upon the prior written consent of Credit Union.

      b.      No course of dealing on the part of Credit Union, its officers or employees, nor any delay or failure of Credit Union in exercising any right, power or privilege hereunder shall operate as a waiver or otherwise affect such right, power or privilege, nor shall any single or partial exercise thereof preclude the exercise of any other right, power or privilege. No delay or failure of Credit Union at any time to demand strict adherence to this Agreement or to the Loan Documents shall be deemed to constitute a course of conduct inconsistent with the Credit Union's rights at any time before or after default, or upon the occurrence of an Event of Default, to demand strict adherence to the terms contained herein.

      c.      The Loan Documents are incorporated herein by reference as if set forth in full.

      d.      This Agreement and the Loan Documents shall be interpreted, and the rights and obligations of the parties hereunder, including but not limited to, matters of construction, validity and performance, as well as the security provided for herein, shall be determined under the laws of the State of California and/or Georgia, to the extent such law(s) are determined to be applicable.

      e.      All representations and warranties contained herein are made in writing by Borrower in connection herewith and shall be continuing and shall survive the execution and delivery of this Agreement.

6

f.    No waiver of default shall be effective unless in writing and signed by an officer of the Credit Union.  No waiver of any default or forbearance on the part of Credit Union in enforcing any of its rights under this Agreement shall operate as a waiver of any other default or right or of the same default or right on a future occasion.

g.    In all cases herein where the context and construction so require, all words used in the singular shall be deemed to have been used in the plural.  The obligations, agreements, covenants and warranties hereunder and under the documents and instruments contemplated herein shall be joint, joint and several, and several.

h.    Borrower from time to time, upon written request of Credit Union will make, execute, acknowledge and deliver all such further and additional instruments, documents, notes, agreements or such other written memoranda, and take all other further action as may be deemed appropriate by Credit Union to carry out the intent and purpose of this Agreement and the Loan Documents, and to provide for the payments of all indebtedness, according to the intent and purpose herein and therein expressed.

i.    This Agreement contains the entire Agreement of the parties hereto, with all prior negotiations between the parties being deemed to be merged herein, and none of the parties shall be bound by anything not expressed in writing.  Neither this Agreement nor any of the Loan Documents shall be modified or amended except by a written instrument signed by the Borrower (or its respective authorized agent) and by Credit Union.

j.    Should any part, term or provision of this Agreement be determined by a Court of appropriate jurisdiction to be illegal or in conflict with any laws of the State of California, and/or Georgia, to the extent such law(s) are determined to be applicable, the validity of the remaining portion or portions of this Agreement shall not be affected thereby.

k.    The provisions of this Agreement and all subsections hereof shall take priority over any conflicting printed provisions of any of the Loan Documents, unless the rights, security or collateral of Credit Union would be adversely affected of dismissed thereby.

l.    All titles and captions of the various sections, paragraphs and subparagraphs of this Agreement have been inserted only for the purpose of the convenience of the parties and are not a part of this Agreement, and should not be deemed in any manner to modify, explain, enlarge or restrict this Agreement.

m.    Time shall be of the essence as regarding this Agreement.

n.    Any and all approvals, acceptances or discretionary acts or decisions to be made by Credit Union as provided in this Agreement or the Loan Documents may be granted or denied by Credit Union in its sole and absolute discretion.

o.    Borrower agrees that, without the prior written consent of Credit Union, this Agreement may not be disclosed, copied, duplicated or distributed to any party other than the parties hereto and their respective accountants, officers and attorneys.  Borrower agrees that the terms of this Agreement and the terms of any documents executed in connection herewith shall not be disclosed to any other party whosoever, other than in accordance with the preceding sentence, except as required by law.

p.    The Borrower has had an opportunity to consult counsel regarding the terms and conditions of this Agreement.

7

q.    This Agreement may be executed in one or more counterparts, which executed counterparts, shall constitute duplicate originals of one and the same Agreement.

r.    The prevailing party in any dispute between the parties (i) arising out of the interpretation, application, or enforcement of any provision of this Agreement or any of the financial transactions between the parties; and/or (ii) relating in any way to any of the financial transactions between the parties or this Agreement, regardless of whether the dispute is based on contract, tort, or statute; shall be entitled to recover all of its reasonable attorneys' fees and costs whether suit be filed or not, including, without limitation, costs and attorneys' fees related to or arising out of any arbitration proceeding, trial, or appellate proceedings.

IN WITNESS WHEREOF, each party has caused the due execution and delivery of this Agreement upon the day and date first hereinabove provided.

WITNESS:                                    "BORROWER"

The People of the Way Deliverance Evangelistic Church Inc.,
DBA Praise Deliverance Church

_Irene Johnson_

By:  Christine Wallace
Its:  PRESIDENT

WITNESS:                                    "BORROWER"

The People of the Way Deliverance Evangelistic Church Inc.,
DBA Praise Deliverance Church

_Irene Johnson_

By:  SHARENA L. VAUGHN
Its:  SECRETARY

WITNESS:                                    "CREDIT UNION"

Evangelical Christian Credit Union

_Jennifer Faber_

By:  Lisa Tindal
Its:  Director, Loan Servicing

8

# EXHIBIT C

## LOAN MODIFICATION AGREEMENT

| Principal | Orig. Loan Date | Modification Date | Modification No. | Loan Number |
|---|---|---|---|---|
| $683,815.00 | May 24, 2004 | April 11, 2007 | | 938598 |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** The People of the Way Deliverance Evangelistic Church, Inc.

a Georgia Nonprofit Corporation
2474 Highway 17 North
Wrens, GA 30833

**Lender:** Evangelical Christian Credit Union
Main Office
955 West Imperial Highway
Brea, CA 92821

THIS LOAN MODIFICATION AGREEMENT dated April 11, 2007, is made and executed between The People of the Way Deliverance Evangelistic Church, Inc., a Georgia Nonprofit Corporation ("Borrower") and Evangelical Christian Credit Union ("Lender") on the following terms and conditions. Borrower has applied to Lender for a modification to the Existing Loan, as described herein. Lender is willing to make the requested modification solely under the terms and conditions specified in this Modification Agreement and in the Related Documents, to each of which Borrower agrees. Borrower understands and agrees that: (A) in modifying, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Modification Agreement and the Related Documents, and (B) all such Loans shall be and remain subject to the terms and conditions of this Modification Agreement and the Related Documents.

**LOAN MODIFICATIONS.** The Loan, and all Related Documents (including, without limitation, the Note, Security Deed, Assignment of Rents, and Agreement to Provide Insurance), are hereby modified to reflect the following effective as of the date of this Modification Agreement:

**Increase in Loan Amount.** Effective as of the date of this Modification Agreement, the outstanding principal sum of the Loan is increased from $636,438.87 to $683,815.00, which shall also represent the Loan Amount and the Indebtedness as of the date of this Modification Agreement. The paragraph in the Note entitled "Promise to Pay" is hereby replaced in its entirety with the following:

**PROMISE TO PAY.** The People of the Way Deliverance Evangelistic Church, Inc., a Georgia Nonprofit Corporation ("Borrower") promises to pay to Evangelical Christian Credit Union ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Hundred Eighty-Three Thousand Eight Hundred Fifteen and no/100 Dollars ($683,815.00), together with interest on the unpaid principal balance from April 17, 2007, until paid in full.

**Modification of Payment Schedule.** Effective as of the date of this Modification Agreement, the paragraph in the Note entitled "Payment" is hereby replaced in its entirety and a new paragraph entitled "Payments From Payment Reserves" is hereby being added as follows :

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule: 12 monthly consecutive interest payments beginning May 10, 2007, with interest calculated on the unpaid principal balances at an interest rate of 8.500% per annum; and one last irregular payment estimated at $687,159.14 on May 1, 2008, with interest calculated on the unpaid principal balances at an interest rate of 8.500% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any late charges; then to any accrued unpaid interest; and then to principal. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PAYMENTS FROM PAYMENT RESERVES.** So long as Borrower is not otherwise in default of the loan, instead of making the full scheduled payment as described above, Borrower may make a partial payment in the amount of $2,000.00 per month. The balance of the required, scheduled payment may be withdrawn automatically from Borrower's payment reserve account and applied toward the full scheduled payment. Borrower must pay the difference between the full scheduled payment and the automatic partial payment each month when it is due.

# LOAN MODIFICATION AGREEMENT
## (Continued)                                                                    Page 2

The paragraph in the note entitled **CASH RESERVES (PLEDGED)** is replaced in its entirety by the following:

> **Payment Reserves (Pledged) -** Borrower will maintain on deposit with Lender a minimum of $35,000.00 in overall payment reserves. The payment reserves are to be held exclusively for debt service on the loan during extraordinary situations and will be placed on hold.

**COLLATERAL CERTIFICATION.** Borrower hereby expressly warrants, affirms, and certifies to Lender that there has been no material adverse change to the Collateral since the original date of the Loan. A "material adverse change" to the Collateral includes, without limitation: (a) the removal, demolition, alteration, damage or deterioration of buildings or other improvements without replacement of like improvements, other than customary wear and tear; (b) failure to maintain or perform all repairs and maintenance necessary to preserve the value of the collateral property; (c) waste on or to the collateral property or improvements or any portion thereof; or (d) a breach or violation of any applicable federal, state, and local laws, regulations and ordinances, including without limitation any environmental laws.

**NO ADDITIONAL INDEBTEDNESS.** Borrower hereby expressly warrants, affirms, and certifies to Lender that there have been no additional debt secured by the Property, except as otherwise approved by Lender.

**REPRESENTATIONS AND WARRANTIES.** Borrower hereby expressly warrants and affirms to Lender that all representations and warranties made by Borrower in this Modification Agreement and the other Related Documents remain valid and true as of the date of this Modification Agreement.

**CONTINUING VALIDITY.** Except as expressly changed by this Modification Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. This Modification Agreement is a revision only, and not a novation. Any inconsistency or conflict between this Modification Agreement and the other Related Documents shall be strictly interpreted in favor of the terms of this Modification Agreement. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Modification Agreement and the Related Documents. Capitalized terms used in this Modification Agreement without definition shall have the meaning provided to such term by the other Related Documents.

**Existing Loan.** The words "Existing Loan" means that certain loan from Lender to Borrower evidenced by that certain Note dated as of May 24, 2004 having an original principal sum of $650,000.00 identified as Lender's loan number 938598.

**Loan.** The word "Loan" means the loan or loans made to Borrower under the Note and the Related Documents, as amended by this Modification Agreement.

**Modification Agreement.** The words "Modification Agreement" mean this Loan Modification Agreement, as this Loan Modification Agreement may be amended or modified from time to time, together with all exhibits and schedules (if any) attached to this Loan Modification Agreement from time to time.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing or executed in connection with the Loan, including, without limitation, this Modification Agreement and any documents now or hereafter existing or executed in connection with this Modification Agreement.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest, including, without limitation, any modification of the existing Security Agreement now or hereafter existing or executed in connection with this Modification Agreement.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Counterparts.** This Modification Agreement may be signed in counterpart and will constitute one in the same document with all the rights and provisions thereof obligatory to all parties.

## LOAN MODIFICATION AGREEMENT
(Continued)

Page 3

**Facsimile Acceptance.** Any copy or facsimile copy of this agreement shall have the same force and effect as the original.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

The People of the Way Deliverance Evangelistic Church, Inc., a Georgia Nonprofit Corporation

By: _____

Christine Wallace, President

By: _____

# EXHIBIT D

# REVISION & EXTENSION AGREEMENT
## Loan #xxx3635

This refers to the loan evidenced by the promissory note dated May 24, 2004, further modified by that certain Loan Modification agreement dated April 11, 2007 executed by The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, a Georgia Non-Profit Corporation, ("Borrower"), which has a present principal balance of $683,815.00 and upon which interest is paid to March 31, 2008. Said note is secured by a Deed of Trust and an Assignment of Rents, both dated May 24, 2004, hereinafter referred to as "the encumbrance," both recorded on May 25, 2004, In Deed Book 368 page 415-424 and in Deed Book 368 page 425-431, respectively, in the recorder's office of Jefferson County, State of Georgia. Said note, subject to the installment maturities therein, if any, is payable in full on May 1, 2008.

Request is hereby made to modify the terms of said note in the manner following:

### The following provision,

"PAYMENT. Borrower will pay this loan in accordance with the following payment schedule: 12 monthly consecutive interest payments beginning May 10, 2007, with interest calculated on the unpaid principal balances at an interest rate of 8.500% per annum; and one last irregular payment estimated at $687,159.14 on May 1, 2008, with interest calculated on the unpaid principal balances at an interest rate of 8.500% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs and any late charges, then to any unpaid interest, and any remaining amount to principal. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. "

### It is hereby amended to read:

"PAYMENT. Borrower will pay this loan in accordance with the following payment schedule: 14 monthly consecutive interest payments beginning May 10, 2007, with interest calculated on the unpaid principal balances at an interest rate of 8.500% per annum; and one last irregular payment estimated at $687,159.14 on July 1, 2008, with interest calculated on the unpaid principal balances at an interest rate of 8.500% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs and any late charges, then to any unpaid interest, and any remaining amount to principal. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. "

In consideration of such modification and your acceptance hereof, and your forbearance to enforce payment except as hereinabove provided, the indebtedness evidenced by said note is hereby acknowledged and admitted, and the undersigned, jointly, severally, and unconditionally, promise and agree to pay the same with interest thereon within the time and in the manner provided, together with attorney's fees, costs of collection, and any other sums secured by the encumbrance.

Any and all securities for said principal obligation held by you, including the encumbrance, may be enforced by you concurrently or independently in such order as you may determine; and with reference to any such security in addition to the encumbrance, you may, without consent of or notice to any of the undersigned, exchange, substitute, or release such security without affecting the liability of the undersigned or any of them, and you may release any one or more parties hereto or to the above obligation, or permit the liability of said party or parties to terminate without affecting the liability of any other party or parties liable thereon.

R&E ext mst 05-20-08.doc                                                                ▸1 of 2

The agreement is a revision only, and not a novation; and except as herein provided, all of the terms and conditions of said note and said encumbrance shall remain in full force and effect.

This agreement may be signed in counterpart and will constitute one in the same document with all the rights and provisions thereof obligatory to all parties.

Any copy or facsimile copy of this agreement shall have the same force and effect as the original.

**Borrower:**
*The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, a Georgia Non-Profit Corporation*

Signed in the City of _WRENS_____, Georgia, this _30th_day of _MAY____, 2008

By: _Christine Wallace_
      Authorized Officer

Name: _CHRISTINE WALLACE_

Title: _PRESIDENT_

By: _Sharena Vaughn_
      Authorized Officer

Name: _SHARENA VAUGHN_

Title: _SECRETARY_

# EXHIBIT E

**415**

GA INTANGIBLE TAX PAID
$ 1950.00
5-26-2004
JENNY W. GORDY
TAX COMMISSIONER
JEFFERSON COUNTY

**RECORDATION REQUESTED BY:**
RETURN TO:
STEPHEN H. STEINBERG
3714 Executive Center Drive
Martinez, GA  30907

GEORGIA JEFFERSON COUNTY
OFFICE OF CLERK OF SUPERIOR COURT

FILED FOR RECORD 5-25-04
AT 11:30 O'CLOCK A M
RECORDED 5-26-04
DEED BOOK 368 PAGE 415-424
~~~~~~~~ DEPUTY CLERK

**WHEN RECORDED MAIL TO:**
Evangelical Christian Credit Union
955 West Imperial Highway
Brea, CA  92821

**SEND TAX NOTICES TO:**
The People of the Way Deliverance Evangelistic
Church dba Praise Deliverance Church, A Georgia
Non-Profit  Corporation
505 Stephens Street
Wrens, GA  30833

---

## SECURITY DEED

THIS SECURITY DEED dated May 24, 2004, is made and executed between The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, A Georgia Non-Profit  Corporation, whose address is 505 Stephens Street, Wrens, GA  30833 (referred to below as "Grantor") and Evangelical Christian Credit Union, whose address is 955 West Imperial Highway, Brea, CA  92821 (referred to below as "Lender").

**GRANT OF SECURITY DEED.** FOR AND IN CONSIDERATION of the financial accommodations to Grantor by Lender resulting in the obligation which is hereinafter more particularly described, and in order to secure that obligation, Grantor hereby grants, bargains, conveys, transfers, assigns and sells to Lender all of Grantor's right, title, and interest in and to the following described real property:  **The Real Property is located in  Jefferson County, State of Georgia and is described as follows:**

> **See Exhibit "A" , which is attached to this Security Deed and made a part of this Security Deed as if fully set forth herein.**

TOGETHER WITH ANY AND ALL of the following:  (i) all buildings, structures and Improvements now or hereafter located on the real property or on any part or parcel thereof and all fixtures affixed or attached, actually or constructively, thereto;  (ii) all and singular the tenements, hereditaments, easements and appurtenances belonging thereunto or in any wise appertaining thereto and the reversion and reversions, remainder or remainders thereof;  (iii) all Rents accruing therefrom, whether now or hereafter due;  (iv) all accounts and contract rights now or hereafter arising in connection with any part or parcel thereof or any buildings, structures or improvements now or hereafter located thereon, including without limitation all accounts and contract rights in and to all leases or undertakings to lease now or hereafter affecting the land or any buildings, structures, or improvements thereon;  (v) all minerals, flowers, crops, trees, timber, shrubbery and other emblements now or hereafter located thereon or thereunder or on or under any part or parcel thereof;  (vi) all estates, rights, title and interest therein, or in any part or parcel thereof;  (vii) all equipment, machinery, apparatus, fittings, fixtures, furniture, furnishings, mobile homes, modular homes and all personal property of every kind or description whatsoever now or hereafter located thereon, or in or on the buildings, structures and Improvements thereon, and used in connection with the operation and maintenance thereof, and all additions thereto and replacements thereof; and  (viii) all building materials, supplies, goods and equipment delivered thereto and placed thereon for the purpose of being affixed to or installed or incorporated or otherwise used in the buildings, structures or other improvements now or hereafter located thereon or any part or parcel thereof.

**The Real Property or its address is commonly known as  2472 Highway 17 North, 505 Stephens Street, and 208 Broad Street, Wrens, GA  30833.  The Real Property tax identification number is 0084-027, 53650, Property located at Map 84C Parcel 20, and Map R02 Parcel 21**

THIS SECURITY DEED, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $650,000.00 WHICH HAS THE MATURITY DATE OF JUNE 1, 2009, THE RELATED DOCUMENTS, AND THIS SECURITY DEED. IT IS THE INTENTION OF GRANTOR AND LENDER TO CREATE A PERPETUAL OR INDEFINITE SECURITY INTEREST IN THE REAL PROPERTY DESCRIBED IN THIS SECURITY DEED PURSUANT TO O.C.G.A. 44-14-80 AND TO AGREE THAT TITLE SHALL NOT REVERT TO GRANTOR FOR A PERIOD OF TWENTY (20) YEARS FROM THE DATE OF THIS SECURITY DEED.  HOWEVER, NOTHING IN THIS PARAGRAPH WILL IMPAIR LENDER'S RIGHTS TO COLLECTION OF THE INDEBTEDNESS AND FORECLOSURE OF THE SECURITY INTEREST IF THE INDEBTEDNESS IS NOT REPAID WHEN DUE.  THIS SECURITY DEED IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Security Deed, Grantor shall pay to Lender all amounts secured by this Security Deed as they become due and shall strictly perform all of Grantor's obligations under this Security Deed and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

> **Possession and Use.** Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2) use, operate or manage the Property; and  (3)  collect the Rents from the Property.

> **Duty to Maintain.**  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and



# 416

## SECURITY DEED
## (Continued)

Page 2

maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Security Deed. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Security Deed or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Security Deed, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Security Deed and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Security Deed.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Security Deed upon the sale or transfer, without Lender's prior written consent, of all or any part of the Property, or any interest in the Property. A "sale or transfer" means the conveyance of Property or any right, title or interest in the Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Property, or by any other method of conveyance of an interest in the Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Georgia law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Security Deed:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Security Deed, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest



**417**

proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $5,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Security Deed:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $5,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Security Deed. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Security Deed, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Security Deed or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Security Deed or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Security Deed also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Security Deed:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Security Deed, and (b) Grantor has the full right, power, and authority to execute and deliver this Security Deed to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Security Deed, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

 

**418**

## SECURITY DEED
## (Continued)

Page 4

Compliance With Laws.  Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties.  All representations, warranties, and agreements made by Grantor in this Security Deed shall survive the execution and delivery of this Security Deed, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.**  The following provisions relating to condemnation proceedings are a part of this Security Deed:

Proceedings.  If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds.  If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property.  The net proceeds of the award shall mean the award after payment of all reasonable attorneys' fees and costs and expenses, including court costs that are incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.**  The following provisions relating to governmental taxes, fees and charges are a part of this Security Deed:

Current Taxes, Fees and Charges.  Upon request by Lender, Grantor shall execute such documents in addition to this Security Deed and take whatever other action is requested by Lender to perfect and continue Lender's security interest on the Property.  Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Security Deed, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Security Deed.

Taxes.  The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Security Deed or upon all or any part of the  Indebtedness secured by this Security Deed;  (2)  a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Security Deed;  (3)  a tax on this type of Security Deed chargeable against the Lender or the holder of the Note; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

Subsequent Taxes.  If any tax to which this section applies is enacted subsequent to the date of this Security Deed, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either  (1)  pays the tax before it becomes delinquent, or  (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.**  The following provisions relating to this Security Deed as a security agreement are a part of this Security Deed:

Security Agreement.  This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest.  Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property.  In addition to recording this Security Deed in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Security Deed as a financing statement.  Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest.  Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property.  Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses.  The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Security Deed may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Security Deed.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.**  The following provisions relating to further assurances and attorney-in-fact are a part of this Security Deed:

Further Assurances.  At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve  (1)  Grantor's obligations under the Note, this Security Deed, and the Related Documents, and  (2)  the liens and security interests created by this Security Deed as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor.  Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-in-Fact.  If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense.  For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.



**419**

## SECURITY DEED
### (Continued)

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Security Deed, Lender shall execute and deliver to Grantor a suitable satisfaction of this Security Deed and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Security Deed:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Security Deed to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Security Deed or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Security Deed or any related document.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Security Deed or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Security Deed or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Security Deed within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S REMEDIES AND POWER OF SALE.** Upon the occurrence of an Event of Default, Lender shall have the following rights, powers, and remedies:

**Accelerate Indebtedness.** Lender, at Lender's option and election and without notice to Grantor, may declare all or any portion of the Indebtedness to be immediately due and payable, whereupon the same shall be and shall become due and payable forthwith without presentment demand, protest or notice of any kind, all of which are expressly waived by Grantor.

**Entry and Possession.** Lender may enter upon the Property, or any part thereof, and take possession of the Property, excluding therefrom Grantor and all agents, employees and representatives of Grantor; employ a manager of the Property or any part thereof; hold, store, use, operate, manage, control, maintain and lease the Property or any part thereof; conduct business thereon; make all necessary and appropriate repairs, renewals, and replacements; keep the Property insured; and carry out or enter into agreements of any kind with respect to the Property.

**Collection of Rents.** Lender may collect and receive all Rents from the Property and apply the same to the Indebtedness, after deducting therefrom all costs, charges, and expenses of taking, holding, managing, and operating the Property, including the fees and expenses of Lender's attorneys, and agents.

**Payments.** Lender may pay any sum or sums deemed necessary or appropriate by Lender to protect the Property or any part of the




## 420

### SECURITY DEED
### (Continued)

**Page 6**

Property or Lender's interest in the Property.

**Other Remedies.** Lender may exercise all rights and remedies contained in any Related Document, heretofore, concurrently herewith or in the future executed by Grantor in favor of Lender in connection with the transactions resulting in the Indebtedness or any part thereof.

**Appointment of Receiver.** Lender may make application to any court and be entitled to the appointment of a receiver to take charge of the Property or any part thereof without alleging or proving, or having any consideration given to, the insolvency of Grantor, the value of the Property as security for the Indebtedness, or any other matter usually incident to the appointment of a receiver.

**UCC Remedies.** With respect to the Personal Property in which a security interest is herein granted, Lender may exercise any or all of the rights accruing to a secured party under this Security Deed, the Uniform Commercial Code (Sections 11-9-101 et. seq. of the Ga. Code Annotated) and any other applicable law. Grantor shall, if Lender requests, assemble all such Personal Property and make it available to Lender at a place or places to be designated by Lender, which shall be reasonably convenient to Grantor and Lender. Any notice required to be given by Lender of a public or private sale, lease or other disposition of the Personal Property or any other intended action by Lender may be delivered personally to Grantor or may be deposited in the United States mail with postage prepaid duly addressed to Grantor at the address of Grantor last known to Lender at least five (5) business days prior to such proposed action, and shall constitute reasonable and fair notice to Grantor of any such action.

**Power of Sale.** Lender may sell the Property, or any part thereof or any interest therein, separately, at Lender's discretion, with or without taking possession thereof, at public sale before the courthouse door of the county in which the Property, or any part thereof, is located, to the highest bidder for cash, after first giving notice of the time, place and terms of such sale by advertisement, published once a week for four weeks (without regard for the number of days) in a newspaper in which advertisements of sheriff's sales are published in such county. The advertisement so published shall be notice to Grantor, and Grantor hereby waives all other notices. Lender may bid and purchase at any such sale, and Lender may execute and deliver to the purchaser or purchasers at any such sale a sufficient conveyance of the Property, or the part thereof or interest therein sold. Lender's conveyance may contain recitals as to the occurrence of an Event of Default, under this Security Deed, which recitals shall be presumptive evidence that all preliminary acts prerequisite to such sale and conveyance were in all things duly complied with. The recitals made by Lender shall be binding and conclusive upon Grantor, and the sale and conveyance made by Lender shall divest Grantor of all right, title, interest and equity that Grantor may have had in, to and under the Property, or the part thereof or interest therein sold, and shall vest the same in the purchaser or purchasers at such sale. Lender may hold one or more sales hereunder until the Indebtedness has been satisfied in full. Grantor hereby constitutes and appoints Lender as Grantor's agent and attorney-in-fact to make such sale, to execute and deliver such conveyance and to make such recitals, and Grantor hereby ratifies and confirms all of the acts and doings of Lender as Grantor's agent and attorney-in-fact hereunder. Lender's agency and power as attorney-in-fact hereunder are coupled with an interest, cannot be revoked by insolvency, incompetency, death or otherwise, and shall not be exhausted until the Indebtedness has been satisfied in full. The proceeds of each sale by Lender hereunder shall be applied first to the costs and expenses of the sale and of all proceedings in connection therewith, including attorneys' fees if applicable, then to payment of the Indebtedness, and the remainder, if any, shall be paid to Grantor. If the proceeds of any sale are not sufficient to pay the Indebtedness in full, Lender shall determine, at Lender's option and in Lender's discretion, the portions of the Indebtedness to which the proceeds (after deducting therefrom the costs and expenses of the sale and all proceedings in connection therewith) shall be applied and in what order the proceeds shall be so applied. Grantor covenants and agrees that, in the event of any sale pursuant to the agency and power herein granted, Grantor shall be and become a tenant holding over and shall deliver possession of the Property, or the part thereof or interest therein sold, to the purchaser or purchasers at the sale or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over.

**Cumulative Remedies.** All rights and remedies set forth in this Security Deed are cumulative and in addition to any right or remedy provided for by statute, or now or hereafter existing at law or in equity, including without limitation the right of Lender to collect or enforce the Indebtedness with or without taking action with respect to the Property. Lender may, at Lender's election and at Lender's discretion, exercise each and every such right and remedy concurrently or separately. Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Security Deed or by any other writing, shall be cumulative and may be exercised singularly or concurrently.

**Attorneys' Fees; Expenses.** If any part of the Indebtedness is collected by or with any assistance from or consultation with an attorney at law, Grantor shall pay to Lender as Lender's attorneys' fees, fifteen percent (15%) of such amount collected. Whether or not any court action is involved, and to the extent not prohibited by law, all attorneys' fees and all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Security Deed, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Security Deed. All copies of notices of foreclosure from the holder of any prior security interest which has priority over this Security Deed shall be sent to Lender's address, as shown near the beginning of this Security Deed. Any party may change its address for notices under this Security Deed by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.



421

**SECURITY DEED**
**(Continued)**                                                                    Page 7

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Security Deed:

**Amendments.** This Security Deed, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Security Deed. No alteration of or amendment to this Security Deed shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Security Deed are for convenience purposes only and are not to be used to interpret or define the provisions of this Security Deed.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Security Deed unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Security Deed shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Security Deed. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Security Deed, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Security Deed to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Security Deed. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Security Deed shall not affect the legality, validity or enforceability of any other provision of this Security Deed.

**Merger.** There shall be no merger of the interest or estate created by this Security Deed with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Security Deed on transfer of Grantor's interest, this Security Deed shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Security Deed and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Security Deed or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Security Deed.

**Waiver of Notice and Hearing and Homestead Exemption.** Grantor expressly waives: (1) any right Grantor may have under the Constitution of the State of Georgia or the Constitution of the United States of America to notice or to a judicial hearing prior to the exercise of any right or remedy provided to Lender by this Security Deed and Grantor waives Grantor's rights, if any, to set aside or invalidate any sale under power duly consummated in accordance with the provisions of this Security Deed on the ground (if such be the case) that the sale was consummated without prior notice or judicial hearing or both; and (2) all homestead exemption rights, if any, which Grantor or Grantor's family may have pursuant to the Constitution and laws of the United States, the State of Georgia or any other State of the United States, in and to the Property as against the collection of the Indebtedness, or any part of the Indebtedness. All waivers by Grantor in this provision have been made voluntarily, intelligently and knowingly by Grantor, after Grantor has been afforded an opportunity to be informed by counsel of Grantor's choice as to possible alternative rights. Grantor's execution of this Security Deed shall be conclusive evidence of the making of such waivers and that such waivers have been voluntarily, intelligently and knowingly made.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Security Deed. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Security Deed shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, A Georgia Non-Profit Corporation and includes all co-signers and co-makers signing the Note.

**Default.** The word "Default" means the Default set forth in this Security Deed in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Security Deed in the events of default section of this Security Deed.

**Grantor.** The word "Grantor" means The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, A Georgia Non-Profit Corporation.



·422

**SECURITY DEED
(Continued)**

Page 8

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Security Deed, together with any amounts expended to preserve and protect the Property and together with interest on such amounts as provided in this Security Deed.

**Lender.** The word "Lender" means Evangelical Christian Credit Union, its successors and assigns.

**Note.** The word "Note" means the promissory note dated May 24, 2004, **in the original principal amount of $650,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is June 1, 2009. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, mobile homes, modular homes, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached, affixed to or used in the operation of the Real Property excluding only that property which by operation of law is Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Security Deed less and except the Personal Property.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Security Deed.** The words "Security Deed" mean this Security Deed between Grantor and Lender, and includes without limitation all assignments and security interest provision relating to the Personal Property and the Rents.

423

## SECURITY DEED
### (Continued)

Page 9

IN WITNESS WHEREOF, THIS SECURITY DEED HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF. THIS SECURITY DEED IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS SECURITY DEED IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

Signed, Sealed and Delivered in the presence of:

X _____
    Unofficial Witness

_____
Notary Public, _____Richmond_____ County

(NOTARY SEAL)

My Commission expires: __5/17/05__

**GRANTOR:**

THE PEOPLE OF THE WAY DELIVERANCE EVANGELISTIC CHURCH DBA PRAISE DELIVERANCE CHURCH, A GEORGIA NON-PROFIT CORPORATION

By: _____ (Seal)
    Christine Wallace, President of The People
    of the Way Deliverance Evangelistic Church
    dba Praise Deliverance Church, A Georgia
    Non-Profit Corporation

By: _____ (Seal)
    Sharena Vaughn, Secretary of The People
    of the Way Deliverance Evangelistic Church
    dba Praise Deliverance Church, A Georgia
    Non-Profit Corporation

LASER PRO Lending, Ver. 5.34.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2004. All Rights Reserved. - GA/CA K:\SEC_APP\NCR\WINCFN\PL\G05.FC TR-1541 PR-818F



424

EXHIBIT "A"

### TRACT NOS. 1 AND 2

All those two tracts or parcels of land, with all improvements thereon, situate, lying and being in the 81st G.M.D. of Jefferson County, Georgia, fronting on the northeast side of Georgia Route 17, also known as Thomson – Wrens Highway, and being further described as Parcel "A" containing 18.43 acres, and Parcel "B" containing 11.03 acres, as delineated on a plat of survey dated February 5, 1997 prepared for John Mitchell Carter, Sr., by John M. Harriss, R.L.S. #1769, said plat being recorded in the Office of the Clerk of Superior Court of Jefferson County, Georgia, in Deed Book 234, at Page 331. Reference being made to said plat for a more complete and accurate description, of the metes, bounds and location of said property.

peopleRte17.des1

### TRACT NO. 3:

All that lot or parcel of land, with the improvements located thereon, lying and being in the City of Wrens, 81st District G.M. of Jefferson County, Georgia and having a frontage of 26 feet on the south side of Broad Street and extending back of equal width a distance of 100 feet. The said property is bounded, now or formerly, as follows: North by Broad Street; East by Lot of Bank of Stapleton conveyed to R.G. Rabun; South by Short Street; and West by property of City of Wrens on which the old City Hall is located. Said property is known under the present system of building numbering in the City of Wrens as 208 Broad Street, Wrens, Georgia.

This being the same property conveyed to grantor herein by deed of Robert H. Tidwell dated May 26, 1999 and recorded in the office of the Clerk of Superior Court of Jefferson County, Georgia in Deed Book 259, pages 361-362.

people. des2

### TRACT NOS. 4, 5, AND 6:

All those three tracts or parcels of land with improvements thereon, situate, lying and being in the 81st GMD Jefferson County, Georgia, being shown and designated as Lots 4, 5, and 6 of Block "C" of Spring Valley Estates on a plat of survey of the Robert C. Stephens Subdivision by Edward G. Andrews, RLS, dated August 27, 1968, recorded in Book 82, page 131, Office of the Clerk of Superior Court, Jefferson County, Georgia. Said lots are bounded collectively on the North by Lot 3 of said Block "C"; on the South by property of C.P. Wren Estate; on the East by property of C.P. Wren Estate and on the West by the right-of-way of Charles Court (now known as Stephens Street). The improvements on said lots are known under the present system of numbering in Jefferson County as 505 Stephens Street, Wrens, Georgia 30833.

people.des3
peoplecombined.des

# EXHIBIT F

**RECORDATION REQUESTED BY:**
RETURN TO:
STEPHEN H. STEINBERG
3714 Executive Center Drive
Martinez, GA   30907

**WHEN RECORDED MAIL TO:**
Evangelical Christian Credit Union
955 West Imperial Highway
Brea, CA  92821

**SEND TAX NOTICES TO:**
The People of the Way Deliverance Evangelistic
Church dba Praise Deliverance Church, A Georgia
Non-Profit  Corporation
505 Stephens Street
Wrens, GA  30833

GEORGIA JEFFERSON COUNTY
OFFICE OF CLERK OF SUPERIOR COURT
FILED FOR RECORD 5-25 20 04
AT 11:30 O'CLOCK A M
RECORDED 5 26 20 04 IN
BOOK 368 PAGE 435-431
DEPUTY CLERK

## ASSIGNMENT OF RENTS

**THIS ASSIGNMENT OF RENTS** dated May 24, 2004, is made and executed between The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, A Georgia Non-Profit  Corporation, whose address is 505 Stephens Street, Wrens, GA   30833 (referred to below as "Grantor") and Evangelical Christian Credit Union, whose address is 955 West Imperial Highway, Brea, CA  92821 (referred to below as "Lender").

**ASSIGNMENT.  For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Jefferson County, State of Georgia and is described as follows:**

See Exhibit "A" , which is attached to this Assignment and made a part of this Assignment as if fully set forth herein.

**The Property or its address is commonly known as  2472 Highway 17 North, 505 Stephens Street, and 208 Broad Street, Wrens, GA   30833.  The Property tax identification number is 0084-027, 53650, Property located at Map 84C Parcel 20, and Map R02 Parcel 21**

THIS ASSIGNMENT IS GIVEN TO SECURE  (1) PAYMENT OF THE INDEBTEDNESS AND  (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS.  THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment.  Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

GRANTOR'S REPRESENTATIONS AND WARRANTIES.  Grantor warrants that:

Ownership. Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

Right to Assign.  Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

No Prior Assignment.  Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

No Further Transfer.  Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.  Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents.  For this purpose, Lender is hereby given and granted the following rights, powers and authority:

Notice to Tenants.  Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

Enter the Property.  Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

Maintain the Property.  Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof

**426**

## ASSIGNMENT OF RENTS
### (Continued)

<div align="right">Page 2</div>

and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of Georgia and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default on Other Payments.** Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to perform Grantor's obligations under this Assignment or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

427

## ASSIGNMENT OF RENTS
## (Continued)

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Assignment within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment fee which Grantor would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If any part of the Indebtedness is collected by or with any assistance from or consultation with an attorney at law, Grantor shall pay to Lender as Lender's attorneys' fees, fifteen percent (15%) of such amount collected. Whether or not any court action is involved, and to the extent not prohibited by law, all attorneys' fees and all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**EXHIBIT A.** An exhibit, titled "Exhibit "A"," is attached to this Assignment and by this reference is made a part of this Assignment just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Assignment.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Merger.** There shall be no merger of the interest or estate created by this assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1) In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2) If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

428

## ASSIGNMENT OF RENTS
## (Continued)

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**WAIVER OF RIGHT OF REDEMPTION.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS ASSIGNMENT, GRANTOR HEREBY WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OR JUDGMENT OF FORECLOSURE ON GRANTOR'S BEHALF AND ON BEHALF OF EACH AND EVERY PERSON, EXCEPT JUDGMENT CREDITORS OF GRANTOR, ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS ASSIGNMENT.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, A Georgia Non-Profit Corporation.

**Default.** The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, A Georgia Non-Profit Corporation.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with any amounts expended to preserve and protect the Property and together with interest on such amounts as provided in this Assignment.

**Lender.** The word "Lender" means Evangelical Christian Credit Union, its successors and assigns.

**Note.** The word "Note" means the promissory note dated May 24, 2004, **in the original principal amount of $650,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

# ASSIGNMENT OF RENTS
## (Continued)

Page 5

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON MAY 24, 2004.

IN WITNESS WHEREOF, THIS ASSIGNMENT HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF. THIS ASSIGNMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS ASSIGNMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

Signed, Sealed and Delivered in the presence of:

GRANTOR:

X _____
Unofficial Witness

_____
Notary Public, _____ Richmond _____ County

(NOTARY SEAL)

My Commission expires: _____ 5/17/05 _____

THE PEOPLE OF THE WAY DELIVERANCE EVANGELISTIC CHURCH DBA PRAISE DELIVERANCE CHURCH, A GEORGIA NON-PROFIT CORPORATION

By: _____ (Seal)
Christine Wallace, President of The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, A Georgia Non-Profit Corporation

By: _____ (Seal)
Shareda Vaughn, Secretary of The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, A Georgia Non-Profit Corporation

LASER PRO Lending, Ver. 5.24.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2004. All Rights Reserved. - GA/CA K:\SEC_APPS\CFIWIN\CFI\LPL\G14.FC TR-1541 PR-81BF

430

# EXHIBIT "A"

This EXHIBIT "A" is attached to and by this reference is made a part of the ASSIGNMENT OF RENTS, dated May 24, 2004, and executed in connection with a loan or other financial accommodations between EVANGELICAL CHRISTIAN CREDIT UNION and The People of the Way Deliverance Evangelistic Church dba Praise Deliverance Church, A Georgia Non-Profit Corporation.

See Exhibit "A" attached hereto and made a part hereof.

THIS EXHIBIT "A" IS EXECUTED ON MAY 24, 2004.

GRANTOR:

THE PEOPLE OF THE WAY DELIVERANCE EVANGELISTIC CHURCH DBA PRAISE DELIVERANCE CHURCH, A GEORGIA NON-PROFIT CORPORATION

By: _____  (Seal)
    Christine  Wallace, President of The People of
    the Way Deliverance Evangelistic Church dba
    Praise   Deliverance   Church,   A   Georgia
    Non-Profit Corporation

By: _____  (Seal)
    Sharena Vaughn, Secretary of The People of
    the Way Deliverance Evangelistic Church dba
    Praise   Deliverance   Church,   A   Georgia
    Non-Profit Corporation

LASER PRO Lending, Ver. 5.24.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2004.  All Rights Reserved.   - GA/CA  K:\SEC_APPS\CFI\WIN\CFI\LPL\G14.FC  TR-1541  PR-91BF

431

**EXHIBIT "A"**

**TRACT NOS. 1 AND 2**

All those two tracts or parcels of land, with all improvements thereon, situate, lying and being in the 81st G.M.D. of Jefferson County, Georgia, fronting on the northeast side of Georgia Route 17, also known as Thomson -- Wrens Highway, and being further described as Parcel "A" containing 18.43 acres, and Parcel "B" containing 11.03 acres, as delineated on a plat of survey dated February 5, 1997 prepared for John Mitchell Carter, Sr., by John M. Harriss, R.L.S. #1769, said plat being recorded in the Office of the Clerk of Superior Court of Jefferson County, Georgia, in Deed Book 234, at Page 331. Reference being made to said plat for a more complete and accurate description, of the metes, bounds and location of said property.

peopleRte17.des1

**TRACT NO. 3:**

All that lot or parcel of land, with the improvements located thereon, lying and being in the City of Wrens, 81st District G.M. of Jefferson County, Georgia and having a frontage of 26 feet on the south side of Broad Street and extending back of equal width a distance of 100 feet. The said property is bounded, now or formerly, as follows: North by Broad Street; East by Lot of Bank of Stapleton conveyed to R.G. Rabun; South by Short Street; and West by property of City of Wrens on which the old City Hall is located. Said property is known under the present system of building numbering in the City of Wrens as 208 Broad Street, Wrens, Georgia.

This being the same property conveyed to grantor herein by deed of Robert H.Tidwell dated May 26, 1999 and recorded in the office of the Clerk of Superior Court of Jefferson County, Georgia in Deed Book 259, pages 361-362.

people. des2

**TRACT NOS. 4, 5, AND 6:**

All those three tracts or parcels of land with improvements thereon, situate, lying and being in the 81st GMD Jefferson County, Georgia, being shown and designated as Lots 4, 5, and 6 of Block "C" of Spring Valley Estates on a plat of survey of the Robert C. Stephens Subdivision by Edward G. Andrews, RLS, dated August 27, 1968, recorded in Book 82, page 131, Office of the Clerk of Superior Court, Jefferson County, Georgia. Said lots are bounded collectively on the North by Lot 3 of said Block "C"; on the South by property of C.P. Wren Estate; on the East by property of C.P. Wren Estate and on the West by the right-of-way of Charles Court (now known as Stephens Street). The improvements on said lots are known under the present system of numbering in Jefferson County as 505 Stephens Street, Wrens, Georgia 30833.

people.des3
peoplecombined.des

# EXHIBIT G

GA INTANGIBLE TAX PAID
$ _100.00_
_April 20_ 20_07_
JENNY W. GORDY
TAX COMMISSIONER
JEFFERSON COUNTY

450

**RECORDATION REQUESTED BY:**

GEORGIA JEFFERSON COUNTY
OFFICE OF CLERK OF SUPERIOR COURT
FILED FOR RECORD _4-19_ 20_07_
AT _11:30_ O'CLOCK _A_ M
RECORDED _4-23_ _07_ IN
_____ BOOK _450_ PAGE _450-454_
_____ DEPUTY CLERK

PAXIN CLOSING AND ESCROW, LLC
OLDE MILTON COMMONS
3540 OLD MILTON PARKWAY
ALPHARETTA, GEORGIA 30005
_2~10606_ (770) 416-1952

**SEND TAX NOTICES TO:**
The People of the Way Deliverance Evangelistic
Church, Inc.
2474 Highway 17 North
Wrens, GA  30833

# MODIFICATION OF SECURITY DEED

**THIS MODIFICATION OF SECURITY DEED dated April 11, 2007, is made and executed between The People of the Way Deliverance Evangelistic Church, Inc., dba Praise Deliverance Church, a Georgia Nonprofit Corporation, whose address is 2474 Highway 17 North, Wrens, GA  30833 (referred to below as "Grantor") and Evangelical Christian Credit Union, whose address is 955 West Imperial Highway, Brea, CA  92821 (referred to below as "Lender").**

SECURITY DEED. Lender and Grantor have entered into a Security Deed dated May 24, 2004 (the "Security Deed") which has been recorded in Jefferson County, State of Georgia, as follows:

Recorded on May 26, 2004, in the Office of the Clerk of Superior Court of Jefferson County in Deed Book 368, Pages 415-424.

REAL PROPERTY DESCRIPTION. The Security Deed covers the following described real property located in Jefferson County, State of Georgia and is described as follows:

See Exhibit "A", which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as  2474 Highway 17 North, 505 Stephens Street, 208 Broad Street, Wrens, GA  30833.  The Real Property tax identification number is 0084-027, R002-021, 0084C-022 and 0084C-020.

MODIFICATION. Lender and Grantor hereby modify the Security Deed as follows:

Indebtedness has been modified as of the date of this Modification of Security Deed to increase the principal outstanding balance by $33,815.00 to $683,815.00, to increase the interest rate, to change the monthly payment amount, and provide such other modifications, all as more specifically set forth in that certain Loan Modification Agreement and Forbearance Agreement entered into between Trustor and Lender as of the date of this Modification of Security Deed.  The terms of such Loan Modification Agreement and Forbearance Agreement are hereby made part of this Modification of Security Deed as if fully set forth herein.

CONTINUING VALIDITY. Except as expressly modified above, the terms of the original Security Deed shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Security Deed as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Security Deed (the "Note").  It is the intention of Lender to retain as liable all parties to the Security Deed and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification.  If any person who signed the original Security Deed does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it.  This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

EXHIBIT A. An exhibit, titled "Exhibit "A"," is attached to this Modification and by this reference is made a part of this Modification just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Modification.

451

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF SECURITY DEED AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF SECURITY DEED IS DATED APRIL 11, 2007.

IN WITNESS WHEREOF, THIS MODIFICATION HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF. THIS MODIFICATION IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MODIFICATION IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

Signed, Sealed and Delivered in the presence of:

X _____
   Unofficial Witness

_____
Notary Public, _____ County

        (NOTARY SEAL)
            My Commission Expires
My Commission expires: _____ June 28, 2015 _____

GRANTOR:

THE PEOPLE OF THE WAY DELIVERANCE EVANGELISTIC CHURCH, INC.

By: _____ (Seal)
Christine  Wallace, President of The People
of  the  Way  Deliverance  Evangelistic
Church, Inc.

X _____
   Unofficial Witness    Elizabeth Loh

_____
Notary Public, Orange _____ County

        (NOTARY SEAL)

My Commission expires: January 20, 2008

```
SARA POOLE
Commission # 1464138
Notary Public - California
Orange County
My Comm. Expires Jan 20, 2008
```

LENDER:

EVANGELICAL CHRISTIAN CREDIT UNION
X _____ (Seal)
Authorized Signer  Lisa Dirrim, VP

LASER PRO Lending, Ver. 5.36.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - GA/CA  C:\CFI\MIN\CFI\LPL\G201.FC  TR-2784  PR-3 (M)

2

452

## EXHIBIT
## "A"

This EXHIBIT "A" is attached to and by this reference is made a part of the Modification of Security Deed, dated April 11, 2007, and executed in connection with a loan or other financial accommodations between EVANGELICAL CHRISTIAN CREDIT UNION and The People of the Way Deliverance Evangelistic Church, Inc.

See Exhibit "A" attached hereto and made a part hereof.

THIS EXHIBIT "A" IS EXECUTED ON APRIL 11, 2007.

GRANTOR:

THE PEOPLE OF THE WAY DELIVERANCE EVANGELISTIC CHURCH, INC.


By: _____ (Seal)
Christine Wallace, President of The People of
the Way Deliverance Evangelistic Church, Inc.

LENDER:


EVANGELICAL CHRISTIAN CREDIT UNION


X _____ (Seal)
Authorized Signer

Lisa Dirrim, V.P.

LASER PRO Lending, Ver. 5.36.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - GA/CA  C:\CFI\MI\NCFN_PLV0201.FC  TR-2764  PR-3 (M)

3

# 453

## EXHIBIT "A"

### TRACT NOS. 1 AND 2

All those two tracts or parcels of land, with all improvements thereon, situate, lying and being in the 81st G.M.D. of Jefferson County, Georgia, fronting on the northeast side of Georgia Route 17, also known as Thomson – Wrens Highway, and being further described as Parcel "A" containing 18.43 acres, and Parcel "B" containing 11.03 acres, as delineated on a plat of survey dated February 5, 1997 prepared for John Mitchell Carter, Sr., by John M. Harriss, R.L.S. #1769, said plat being recorded in the Office of the Clerk of Superior Court of Jefferson County, Georgia, in Deed Book 234, at Page 331. Reference being made to said plat for a more complete and accurate description, of the metes, bounds and location of said property.

Said property is further known and designated in the Tax Assessor's Office of Jefferson County, Georgia as Tax Parcel #084-027.

peopleRte17.des1

### TRACT NO. 3:

All that lot or parcel of land, with the improvements located thereon, lying and being in the City of Wrens, 81st District G.M. of Jefferson County, Georgia and having a frontage of 26 feet on the south side of Broad Street and extending back of equal width a distance of 100 feet. The said property is bounded, now or formerly, as follows:  North by Broad Street; East by Lot of Bank of Stapleton conveyed to R.G. Rabun; South by Short Street; and West by property of City of Wrens on which the old City Hall is located. Said property is known under the present system of building numbering in the City of Wrens as 208 Broad Street, Wrens, Georgia.

This being the same property conveyed to grantor herein by deed of Robert H.Tidwell dated May 26, 1999 and recorded in the office of the Clerk of Superior Court of Jefferson County, Georgia in Deed Book 259, pages 361-362.

people. des2

# 454

**TRACT NOS. 4, 5, AND 6:**

All those three tracts or parcels of land with improvements thereon, situate, lying and being in the 81$^{st}$ GMD Jefferson County, Georgia, being shown and designated as Lots 4, 5, and 6 of Block "C" of Spring Valley Estates on a plat of survey of the Robert C. Stephens Subdivision by Edward G. Andrews, RLS, dated August 27, 1968, recorded in Book 82, page 131, Office of the Clerk of Superior Court, Jefferson County, Georgia. Said lots are bounded collectively on the North by Lot 3 of said Block "C"; on the South by property of C.P. Wren Estate; on the East by property of C.P. Wren Estate and on the West by the right-of-way of Charles Court (now known as Stephens Street). The improvements on said lots are known under the present system of numbering in Jefferson County as 505 Stephens Street, Wrens, Georgia 30833.

people.des3
peoplecombined.des